### BERWIND-WHITE COAL MINING CO. v. PORT READING R. CO.

(Circuit Court of Appeals, Second Circuit. May 1, 1922.)

No. 244.

Wharves ⬿20(7)—Evidence held not to prove deliberate sinking of libelant's boat by dumping additional coal into overloaded stern.

In libel, in which it was claimed that respondent deliberately caused libelant's boat to sink by dumping a seventh and eighth load of coal into an overloaded stern, contrary to the protest of the boat master, after the boat had been sent to respondent's wharf and coal chute to obtain a carload of coal, evidence *held* not to sustain contention, in view of improbability thereof.

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Berwind-White Coal Mining Company against the Port Reading Railroad Company. Decree for libelant, and respondent appeals. Reversed and remanded, with directions to dismiss libel.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Vine H. Smith, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. According to the libel, this suit might be entitled as one for the deliberate sinking of libelant's boat Eureka No. 83, by respondent, under the following circumstances:

No. 83 was sent to respondent's wharf and coal chute to obtain a cargo of coal. Having been placed under the chutes, respondent put aboard six cars of coal in such wise that the No. 83 had then a foot freeboard at the stern and four feet at the bow. Thereupon, "instead of dumping the seventh car" in the bow, respondent proceeded to put it in the stern, thus reducing the freeboard at that end of No. 83 to about six inches. Finally (while the boat master protested strongly) respondent dumped an eighth car of coal into the already overloaded stern, whereupon, "almost immediately after the chute from the eighth car of coal was opened, the stern of No. 83 was forced under water and the boat sank."

According to uncontradicted evidence the boat was fit to carry safely 325 tons; her cargo came from coal cars which averaged about 40 tons per car, although such cars had capacity of 50 tons; it was not at all necessary to put the entire load of any given car into any one boat—the chute could be cut off at any time; and the method of loading, well known and long practiced, involved a moving of the boat by electric power under the chute, so that the coal as delivered could be appropriately distributed fore and aft. The probabilities of any situation furnish a material consideration upon the trial of a question of fact (e. g., The John J. Timmins, 233 Fed. 748, 147 C. C. A. 514), and the statements of the libel are extremely improbable, in that the action of respondent as alleged is wholly without motive and opposed to all the business methods under which coal is and long has been furnished to the city of New York.

Even more improbable is the detailed testimony given in support of the libel by the boat master, who declared that he was sure that his boat would have carried seven cars "all right," although she was then about 2½ feet by the stern. Yet he was sure (apparently) that each of the cars whose contents were laden on his boat "would hold 50 tons apiece," and he evidently meant to say that he believed every car to be full. Yet in this condition, with his boat, on his own story, already overloaded by 25 tons, and despite his protest, respondent "loaded the next car right on the stern."

This improbable story is contradicted in gross and in detail by four unimpeached witnesses, and we have no doubt that the fact is that

no protest was made, the No. 83 was not so absurdly out of trim as is alleged, the eight cars did not carry in the aggregate more than a fair load for libelant's boat, which was taken away from the chutes, and sank from seven to ten minutes after apparently proper loading was completed. The trial judge wrote no opinion considering the facts; the record leaves us in no doubt about them. We therefore decide this case from our reading of a very plain and simple record. The City of New York, 54 Fed. 181, 4 C. C. A. 268.

Decree reversed, with costs, and cause remanded, with directions to dismiss the libel.